OPINION
{¶ 1} Defendant-appellant, John J. Johnson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of one count of negligent homicide, felony murder, and felonious assault. For the reasons that follow, we affirm that judgment.
 {¶ 2} In April 2002, three homeless men, appellant, Kyle Quillen, and David Baker, were living in tents at a campsite behind an apartment complex at 4653 Refugee Road in Columbus, Ohio. On the evening of April 20, 2002, the three, along with a few other people, were drinking beer at the camp. Appellant and Quillen got into an argument over "who had the most stuff in the campsite, whose campsite it was." Baker went to sleep in the tent that he normally shared with Quillen. Appellant and Quillen were still awake when Baker went to sleep.
 {¶ 3} Early the next morning, Baker awoke to hear appellant yelling at Quillen to "quit fucking with me. I told you not to fuck with me." "If you keep fucking with me, I'm going to beat you some more." Appellant held a long pipe on his shoulder, stalking Quillen, who was lying on the ground 40 yards away from Baker's tent. After Baker woke up and got dressed, he heard Quillen complaining that he was cold. Appellant again yelled at Quillen to "shut the fuck up or I am going to, or I'm going to beat you some more." Baker told appellant to put a blanket on Quillen. Quillen was still cold, so Baker told appellant to bring him close to the campsite's fire. When Quillen again complained that he was cold, Baker and appellant carried him into Baker's tent and laid him on Baker's sleeping bag. When Baker asked appellant what was going on, appellant stated that "he's fucking with me. I told him to quit fucking with me. So I beat him." Quillen was bleeding from the head so Baker asked Quillen if he needed any help. Quillen told him to go to work, that he was okay.
 {¶ 4} Baker left the campsite and took appellant to a restaurant to keep him away from Quillen. The two drank some coffee and then separated. Baker did not go back to the campsite for two or three days. When he finally returned, he opened his tent and found Quillen dead. Appellant's belongings were no longer at the campsite.
 {¶ 5} As a result of Quillen's death, appellant was charged with one count of murder and one count of felony murder in violation of R.C. 2903.02, and one count of felonious assault in violation of R.C. 2903.11. Appellant pled not guilty to those charges and proceeded to a jury trial. The jury found appellant guilty of felony murder, felonious assault, and negligent homicide, a stipulated lesser included offense of murder. The trial court merged appellant's negligent homicide and felonious assault convictions and sentenced appellant to 15 years to life for his felony murder conviction.
 {¶ 6} Appellant appeals, assigning the following errors:
1. The conviction for murder was against the manifest weight of the evidence.
2. The conviction for murder was not supported by legally sufficient evidence.
3. The trial court erred in asking the key State's witness a question proferred by a juror and then asking two more of the court's own questions when the answers to those questions were extremely prejudicial to the defendant-appellant.
 {¶ 7} We will first address appellant's third assignment of error. Throughout appellant's trial, the trial court permitted jurors to submit written questions to witnesses following examination by counsel. The trial court reviewed the questions with appellant's attorney and the state's attorney to allow them the opportunity to object. The court then asked the witnesses those questions it felt were appropriate and legally permissible. After Baker testified, a juror submitted a question asking if Quillen had any visible signs of injury when Baker left the campsite to go to the restaurant. Appellant's counsel did not object to the question. Baker responded in the affirmative. The trial court, on its own initiative, then asked two follow-up questions: "What did you see?" to which Baker replied "[h]e had blood all over him" and "[w]hat part of his body?" to which Baker answered "[o]n his head." Appellant contends that Baker's answers to these questions prejudiced appellant's defense.
 {¶ 8} The practice of allowing jurors to question witnesses is a matter within the discretion of the trial court. State v.Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, syllabus. InFisher, the court set forth procedures a trial court should follow to minimize any potential prejudice that may arise if it chose to allow juror questioning. Those procedures (1) require jurors to submit their questions to the court in writing; (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness; (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury; (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions; and (5) allow counsel to ask follow-up questions of the witnesses. Id. at ¶ 29.
 {¶ 9} Appellant contends that the juror's question was improper because it materially assisted the state to the detriment of appellant. Appellant has waived this argument on appeal. Appellant's counsel had the opportunity to object to the juror's question outside the presence of the jury and before the trial court asked the question. Although appellant's counsel generally objected to the trial court's practice of allowing written questions from the jury, he did not specifically object to the substance of the question appellant now contends was improper. Failure to object during a trial "constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus (failure to object to jury instructions); State v.Ballew (1996), 76 Ohio St.3d 244, 254. Here, we do not believe it is clear that the outcome of appellant's trial would have been different but for this juror's question. Baker testified that appellant admitted to beating Quillen, and the medical evidence detailed the extent of Quillen's injuries. Moreover, even if appellant had not waived his objection to the juror's question, we see nothing improper about the question. Although Baker's answer may have assisted the state, the relevant inquiry focuses on the propriety of the question — not the prejudicial effect of the answer.
 {¶ 10} Appellant also contends the trial court's follow-up questions to Baker were improper. We first note that appellant's counsel did not object to the trial court's questions, and therefore, appellant has arguably waived this issue on appeal.Hamilton v. Clemans (1997), 121 Ohio App.3d 337. However, even if appellant has not waived this issue, we fail to find error. Evid.R. 614(B) allows the trial court to ask questions of any witness in an impartial manner. A trial court's questioning must be scrupulously limited, lest the court, consciously or not, indicate its opinion on the evidence or on the credibility of a witness. State ex rel. Wise v. Chand (1970), 21 Ohio St.2d 113, paragraph three of the syllabus. If the trial court's questions can reasonably indicate to the jury its opinion of a witnesses' credibility or the weight to be given to that witnesses' testimony, the questions are prejudicially erroneous. Id., paragraph four of the syllabus; State v. Davis (1992),79 Ohio App.3d 450, 454. Therefore, this court must determine whether the trial court's questioning of Baker constituted an abuse of discretion. Clemans, supra, at 339. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests the trial court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Xie
(1992), 62 Ohio St.3d 521, 527.
 {¶ 11} The trial court's two follow-up questions to Baker did not reflect an assessment of Baker's credibility or an assessment of the evidence. The questions were unbiased, impartial questions designed to assist the jury's search for the truth. Cf. Fisher,
supra, at ¶ 19 ("The hallmark of the American trial is the pursuit of truth."); Davis, supra, at 454. Accordingly, because the questions were proper, the trial court did not abuse its discretion when it questioned Baker.
 {¶ 12} Appellant's third assignment of error is overruled.
 {¶ 13} In his second assignment of error, appellant contends that his felony murder conviction was not supported by sufficient evidence. The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 14} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v.Thomas (1982), 70 Ohio St.2d 79, 80. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
supra, at 273.
 {¶ 15} Appellant was convicted of one count of felony murder in violation of R.C. 2903.02(B). A defendant shall be convicted of felony murder if the state proves, beyond a reasonable doubt, that the defendant: (1) caused, (2) the death of another, (3) as a proximate result of the offender's committing or attempting to commit, and (4) an offense of violence that is a felony of the first or second degree and that is not a violation of R.C.2903.03 or 2903.04. The underlying offense of violence for which appellant was convicted was felonious assault, a second degree felony. R.C. 2903.11. Felonious assault, as relevant to this case, prohibits any person from (1) knowingly causing serious physical harm to another, or (2) knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance.
 {¶ 16} Baker testified that on April 21, 2002, he awoke to hear appellant threatening to beat Quillen and saw appellant carrying a long pipe as appellant stalked Quillen, who was lying on the ground. He also testified that appellant told him that "he's fucking with me, I told him to quit fucking with me, so I beat him." Baker saw blood on Quillen's head and asked him a couple of times whether he was okay. Quillen said that he was cold but that he would be okay. Baker then departed with appellant, leaving Quillen at the campsite alone and alive. No one saw Quillen again until April 24, 2002, when Baker went back to the campsite and found him dead.
 {¶ 17} Dr. Dorothy Dean, a deputy coroner for the Franklin County Coroner, performed an autopsy on Quillen on April 25, 2002. She testified that Quillen had multiple blunt force injuries that were caused by a fist or an object that was not sharp. He also had various bruises and scratches on his body, some which she described as defensive. He also sustained two broken bones in his left forearm, a broken shoulder blade, and a broken neck. The broken neck, Dr. Dean opined, was the last injury Quillen sustained and was the cause of death. According to Dr. Dean, an individual would die in less than a second from a broken neck and would not be able to move, talk, or breathe after the injury. She further testified that given the condition of the body, Quillen likely died two or three days earlier and possibly even earlier. This timeline, Dr. Dean opined, was consistent with an April 21, 2002 date of death.
 {¶ 18} Baker testified that before he left the campsite with appellant, he asked Quillen how he was feeling, and that Quillen told him to go to work and that he would be fine. Because Dr. Dean testified that Quillen would not have been able to talk or breathe after sustaining a broken neck, the state theorized that appellant returned to the campsite and killed Quillen sometime after he left Baker at the restaurant.
 {¶ 19} Crucial to this theory of the case was the testimony of two witnesses: James Downs and Larry Adkins. Downs testified that he was drinking with the men at the campsite on April 20, 2002, and witnessed an argument between appellant and Quillen over whose campsite it was. He also testified that he gave a chain saw to Quillen that night. He went back to the campsite on April 24 but did not see the chain saw. He also testified that appellant's tent was no longer at the campsite.
 {¶ 20} Adkins lived in the apartment complex near appellant's campsite. A few days before Quillen's body was found, appellant knocked on Adkins door looking for Don Easton, a mutual friend. Easton was there with Adkins. Adkins testified that appellant looked dirty, had a scrape on his arm, and carried some clothes and a chain saw. Adkins further testified that he heard appellant tell Easton that appellant was looking to sell the chain saw.
 {¶ 21} After viewing all of this evidence in a light most favorable to the state, there was sufficient evidence presented for a rational trier of fact to find that the prosecution proved the essential elements of felony murder beyond a reasonable doubt. Dr. Dean testified that Quillen died as the result of a blunt force trauma to his neck. The injury must have occurred after appellant and Baker left Quillen alone at the campsite. A rational trier of fact could have found that appellant returned to the campsite. Appellant subsequently was seen with a chain saw. A jury could reasonably believe that appellant took the chain saw when he returned to the campsite. Further, when Baker and Downs went back to the campsite, appellant's belongings were no longer there. This evidence would also allow a rational juror to conclude that appellant returned to the campsite.
 {¶ 22} The more difficult question is whether there was sufficient evidence for a rational juror to conclude that after appellant returned to the campsite, appellant killed Quillen. No physical evidence connected appellant to Quillen's death. However, there was substantial evidence that appellant had the motive, means, and opportunity to commit the crimes for which he was convicted. Furthermore, one recognized method of establishing that the accused committed an offense is to show that the accused committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan, or system was utilized to commit both the offense at issue and the other crimes. State v. Curry (1975), 43 Ohio St.2d 66, 73;State v. Hawn (2000), 138 Ohio App.3d 449, 462. Such other acts evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person committed both crimes. Id.
 {¶ 23} Quillen sustained multiple blunt force injuries before he died. Baker testified that he saw appellant stalking Quillen with a long pipe over his shoulder and that appellant admitted to beating Quillen. Appellant also stated to Baker that appellant would beat Quillen again if Quillen did not stop "fucking" with him. Quillen was injured and bleeding from the head when Baker and appellant left the campsite. Appellant and Quillen also had an argument the night before. There was additional evidence that appellant must have returned to the campsite because his belongings were gone and he was subsequently seen trying to sell a chain saw. A chain saw had been given to Quillen at the campsite the evening of April 20, 2002. Dr. Dean testified that the cause of Quillen's death was a broken neck, also caused by blunt force. All of this evidence, viewed in a light most favorable to the state, is sufficient for a rational trier of fact to have found that appellant returned to the campsite and caused the death of Quillen as a proximate result of committing a felonious assault. Accordingly, appellant's second assignment of error is overruled.
 {¶ 24} In his first assignment of error, appellant also argues that his felony murder conviction is against the manifest weight of the evidence. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 25} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston,
Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 26} Although the evidence of guilt was entirely circumstantial, this is not the exceptional case in which the evidence weighs heavily against the conviction. Again, there was substantial evidence presented that appellant had the motive, means, and opportunity to commit the crimes for which he was convicted. Appellant and Quillen had gotten into an argument on the evening of April 20, 2002. That same evening, Downs gave Quillen a chain saw. Baker testified that he woke up the following morning to see appellant stalking Quillen with a long pipe and yelling at Quillen to stop "fucking" with him or he would beat him again. Appellant told Baker that he beat Quillen because Quillen "fucked" with him and that appellant would beat Quillen again if he did not stop "fucking" with him. When appellant and Baker left the campsite, Quillen was alive but bloodied from a cut on his head. Appellant was subsequently seen trying to sell a chain saw. Several days later, Quillen was found dead from a blunt force trauma to his neck. Appellant's possessions were no longer at the campsite when Baker found Quillen dead. The jury, presented with this evidence, did not clearly lose its way when it concluded that appellant returned to the campsite and attacked Quillen, resulting in Quillen's death. Appellant's felony murder conviction is supported by the manifest weight of the evidence, and appellant's first assignment of error is overruled.
 {¶ 27} Having overruled appellant's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.