[Cite as *Deer Creek Excavating v. Hunt's Trenching*, 2013-Ohio-1407.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| DEER CREEK EXCAVATING | JUDGES:<br>Hon. Patricia A. Delaney, P. J.<br>Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
|     Plaintiff-Appellee | |
| -vs- | Case No. 12 CA 53 |
| HUNT'S TRENCHING, et al. | |
|     Defendants-Appellants | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Case No. 11 CV 1451D


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    April 8, 2013


APPEARANCES:

For Plaintiff-Appellee

ROBERT S. ROBY
CURRY, ROBY & MULVEY
8000 Ravine's Edge Court, Suite 103
Columbus, Ohio  43235

For Defendants-Appellants

JOHN S. DILTS
28 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1}   Defendant-Appellant Hunt's Trenching appeals the, decision of the Court of Common Pleas of Richland County, Ohio, finding in favor of Plaintiff-Appellee Deer Creek Excavating, LLC.

## STATEMENT OF THE FACTS AND CASE

{¶2}   This case arises out of the sale of heavy construction equipment to Plaintiff-Appellee Deer Creek Excavating by Defendant-Appellant Hunt's Trenching.

{¶3}   Appellee, Deer Creek Excavating, LLC, ("Deer Creek") is in the business of excavation and underground utility work. (T. at 43, 86). Appellant, Garland Hunt, through his business, Hunt's Trenching, regularly sells used trenching and excavating equipment. (T. at 34, 42, 45, 124). During the spring of 2010, Deer Creek had a storm sewer installation project in Newark Ohio, which required it to cut asphalt along both sides of the street to prepare a trench to install sewer tile. (T. at 45, 46, 49, 86-87). To accomplish this, Deer Creek needed to purchase a tractor with a mounted saw. *Id.* Ditch Witch is a well-known manufacturer of such equipment.

{¶4}   Deer Creek's principals, Benjamin Flynn and Richard Weemhoff, looked at different Ditch Witch options from various sellers; however, while driving down State Route 309, they saw two saws offered for sale in front of Appellant's property. (T. at 45-46, 85). They stopped to look at the saws and trenching machines offered for sale. *Id.* They discussed with Mr. Hunt their need to purchase equipment capable of sawing asphalt for the sewer project. (T. at 45, 46, 86-87).

{¶5}   According to Appellee, Mr. Hunt represented that he had a Ditch Witch R65 saw, which was manufactured to cut through asphalt. *Id.* He advised he could

mount the R65 saw on any of the Ditch Witch tractors available for sale and that the combined unit would do the job of cutting asphalt. (T. at 35, 55, 56, 87, 133). He explained that the trenching attachment could easily be taken off and the saw attachment installed by removing four bolts and the drive chain. (T. at 46, 57, 87-88). Mr. Hunt stated he would have to modify the mounting plate to join the saw to the tractor, but he told Deer Creek that he could make this modification to enable the unit to perform the exact task Appellee needed. (T. at 35, 46, 89-90). Given Mr. Hunt's assurances, Appellee picked out a Ditch Witch 5010 tractor and asked that Mr. Hunt mount the R65 saw. The parties verbally agreed on the price of $16,000. (T. at 48, 55). Further, since the parties observed that the R65 saw wheel appeared to be misaligned with its housing, they agreed Mr. Hunt would align the blade and replace any defective bearings. (T. at 35-36, 104-105, 137). They also agreed Mr. Hunt would check all the fluid levels and top off all lubricants before the machine was picked up. *Id.*

{¶6} On May 12, 2010, Appellee sent a driver to pick up the Ditch Witch tractor with the mounted R-65 saw. (T. at 91, 140). Appellee's driver loaded the unit on its truck and tendered the $16,000 check to Mr. Hunt. *Id.* On the receipt, Mr. Hunt wrote, "Sold where is as is." Appellee claims that the parties had not previously discussed that this was to be an "as is" sale. (T. at 60-61).

{¶7} Appellee's driver took the unit directly to the Newark job site. (T. at 49).

{¶8} Mr. Flynn began sawing the asphalt streets, but immediately encountered problems. (T. at 50). Within minutes, a hydraulic hose blew. Mr. Flynn had Deer Creek's mechanic replace the hose and fluid. He then resumed sawing, but this time, the drive train from the tractor to the saw broke. (T. at 92-94). Appellee stated that the

saw wheel also appeared to be misaligned. Deer Creek's mechanic tried to fix it so that sawing could be resumed. *Id.* The machine was started again, but repair links in the chain continued to break as the saw was operated. *Id.* A new chain drive was ordered, but it proved to be far too short for the machine as it was modified by Mr. Hunt. (T. at 56, 98, 100-102). After approximately four to five hours of trying to get the unit to operate as intended, Mr. Flynn concluded the tractor lacked sufficient torque to operate the saw. (T. at 114-115) He had only been able to saw 100 feet of asphalt in that time. (T. at 95).

{¶9}   Appellee sent the machine back to its yard. It called Donley Concrete to saw the asphalt. (T. at. 58, 59, 95). Donley was able to complete the job in two days during which it sawed 4,000 feet of concrete with its equipment. *Id.*

{¶10}  Appellee contacted Appellant about the equipment's failure. Mr. Weemhoff called Mr. Hunt, leaving messages to this effect. (T. at 51). Mr. Hunt claims he did not receive any such messages. Mr. Hunt agreed that he did receive a certified letter from Appellee advising of the problems and asking for a cancellation of the sale. *Id.* Mr. Hunt ignored this letter and never contacted anyone at Appellee's office to discuss the issue. (T. at 37, 42). He made no effort to correct the problems Appellee experienced with the equipment because, he testified, he is not responsible for the equipment after it leaves his property. *Id.* The tractor and saw unit was stored on Appellee's property until it was taken to Ditch Witch's sales facility in Columbus to be evaluated. (T. at 71). Ditch Witch employees found two problems with the machine: (1) excessive wear of the cutting structure of the saw and (2) misalignment. (See, Deposition Transcript of Coakley at B-9). These problems prevented the machine from cutting any appreciable

distance. Ditch Witch advised that it would cost over $20,000 to repair the unit to working order. *Id.* Ditch Witch stated it would not have retrofitted the R65 saw to the 5010 tractor. (*Id.* at. 24-25).

**{¶11}** Appellee opted not to fix the unit. (T. at 75). It returned the unit to its yard and had its mechanic start it periodically to keep it in operating condition. (T. at 53). On May 15, 2012, Appellee sold the unit at auction to mitigate its damages. The sale was conducted by Ritchie Brothers, professional auctioneers, who advertised the sale and made the equipment available for inspection three days prior to the auction. (T. at 19, 54). Mr. Weemhoff testified the equipment was sold for either $2000 or $2500. (T. at 152).

**{¶12}** On November 10, 2011, Appellee filed a Complaint against Hunt's Trenching, alleging claims for breach of contract and breach of express warranties.

**{¶13}** On December 2, 2011, Appellant filed its Answer.

**{¶14}** On June 4, 2012, Appellant filed a Motion in Limine, Motion to Dismiss, and Trial Brief.

**{¶15}** On June 5, 2012, a bench trial was conducted during which the trial court heard testimony from both parties.

**{¶16}** On June 11, 2012, Appellant filed a Post-Trial Brief.

**{¶17}** On June 12, 2012, the trial court issued a decision in favor of Appellee. The trial court's decision contained its findings of fact and conclusions of law. To the benefit of Defendant-Appellant, the trial court subtracted the higher figure of $2500 from the contract price in awarding damages.

**{¶18}** Appellant now appeals the trial court's decision, assigning the following errors for review.

**ASSIGNMENTS OF ERROR**

**{¶19}** "I. THE COURT ERRED IN ORDERING THE PLAINTIFF TO RE-OPEN THEIR CASE AFTER RESTING TO OFFER ADDITIONAL PROOF THAT HAD NOT BEEN OFFERED IN THEIR CASE-IN-CHIEF AND WHICH WAS THEN UNABLE TO BE CROSS-EXAMINED BY THE DEFENDANT.

**{¶20}** "II. THE COURT ERRED IN GRANTING JUDGEMENT [SIC] FOR THE PLAINTIFF WHEN THERE WAS NO PROOF THAT THE ITEM IN QUESTION EVER FAILED TO WORK EXCEPT FOR THE FACT THAT A BROKEN CHAIN OCCURRED.

**{¶21}** "III. THE PLAINTIFF'S COMPLAINT WAS THAT THE SAW ATTACHED TO THE UNIT WAS INCOMPATIBLE AND THE PLAINTIFF'S EXPERTS STATED THAT THOSE ITEMS WERE COMPATIBLE AND AS SUCH THE PLAINTIFF'S COMPLAINT SHOULD HAVE BEEN DISMISSED AT THE PLAINTIFFS COSTS.

**{¶22}** "IV. THE PLAINTIFF FAILED TO SHOW THAT THE SALE OF THE SUBJECT PROPERTY WAS COMPLETED IN A COMMERCIALLY REASONABLE MANNER. NO DEFICIENCY CAN OR SHOULD HAVE BEEN AWARDED TO THE PLAINTIFF WITHOUT THE SALE BEING COMMERCIALLY REASONABLE."

**I.**

**{¶23}** In its First Assignment of Error, Appellant argues that the trial court erred in ordering Appellee to reopen its case to offer additional evidence after it had rested its case. We disagree.

**{¶24}** During its case-in-chief, Appellee provided testimony that the tractor and saw were sold at an auction. At the conclusion of evidence, the trial court inquired as to the actual sale price and whether there would be a stipulation as to the amount. (T. at 151). The trial court then reminded the witness, Mr. Weemhoff, that he was still under oath, and inquired of him as to whether he knew what the machine sold for at auction. (T. at 152). Mr. Weemhoff stated that to the "[b]est of [his] knowledge, it was two thousand or twenty-five hundred dollars." *Id.*

**{¶25}** The trial court used the higher $2,500.00 value when calculating the damage award.

**{¶26}** Initially, we would note that Appellant failed to object to the trial court's questioning or allowance of this additional testimony, and, as such, waived this issue on appeal.

**{¶27}** Pursuant to Evid.R. 614(B), a trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Because Evid.R. 614(B) permits the trial court discretion to decide whether or not to question a witness, appellate courts must review the trial court's questioning under an abuse of discretion standard. *Brothers v. Morrone–O'Keefe Dev. Co. LLC,* 10th Dist. No 05AP–161, 2006-Ohio-1160, 2006 WL 620894, ¶ 10, citing *State v. Johnson,* 10th Dist. No. 03AP–1103, 2004-Ohio-4842, 2004 WL 2035321, ¶ 10.

**{¶28}** A trial court is obligated to control the proceedings before it, to clarify ambiguities, and to take steps to ensure substantial justice. *Brothers,* citing *State v. Stadmire,* 8th Dist. No. 81188, 2003-Ohio-873, 2003 WL 549912, ¶ 26. Accordingly, a trial court should not hesitate to pose pertinent and even-handed questions to

witnesses. *Id.,* citing *Klasa v. Rogers,* 8th Dist. No. 83374, 2004-Ohio-4490, 2004 WL 1902539, ¶ 32. Further, a trial court enjoys even greater freedom in questioning witnesses during a bench trial because the court cannot prejudicially influence a jury with its questions or demeanor. *Brothers,* citing *Klasa.*

**{¶29}** Evid.R. 614(B), however, requires the trial court to question impartially and thus tempers a trial court's ability to question a witness. *Brothers* at ¶ 12. However, absent " ' "any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth." ' " *Id.,* quoting *State v. Baston,* 85 Ohio St.3d 418, 426, 709 N.E.2d 128 (1999), quoting *Jenkins v. Clark,* 7 Ohio App.3d 93, 98, 454 N.E.2d 541 (2d Dist.1982).

**{¶30}** Upon review, we fail to find how Appellant was prejudiced by the trial court's inquiry. Appellant's First Assignment of Error is overruled.

**II.**

**{¶31}** In its Second Assignment of Error, Appellant argues that no proof was presented that the machine in question failed to work and therefore the trial court erred in granting judgment in favor of Appellee. We disagree.

**{¶32}** "Manifest weight of the evidence" refers to the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In considering a claim the verdict is against the manifest weight of the evidence, we must weigh the evidence and all reasonable inferences to be drawn, and to consider the

credibility of witnesses to determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.*

**{¶33}** Upon review of the transcript, this Court finds that credible, competent evidence was presented from both Rick Weemhoff and Benjamin Flynn that the tractor and saw in this case were unable to perform the tasks for which it was purchased, i.e. cut asphalt. Testimony was presented that the workers experienced problems with the machine the first time they used it, including a broken hose and broken chains. Additional testimony was provided that the saw would only run for approximately four or five hours and that it would only cut about 100 feet of asphalt before failing. (T. at 113).

**{¶34}** Appellant's Second Assignment of Error is overruled.

**III.**

**{¶35}** In its Third Assignment of Error, Appellant argues that the trial court erred in not dismissing Appellee's Complaint in this matter. We disagree.

**{¶36}** Appellant, in its argument in support of this assignment, seems to argue that Appellant failed to prove the saw and machine in this case were not incompatible as alleged in its complaint.

**{¶37}** Upon review, this Court finds that competent, credible evidence was presented that the machine failed to perform those tasks for which it had been purchased and for which they had been assured by Appellant that the machine would perform.

**{¶38}** Based on the foregoing, we find Appellant's Third Assignment of Error not well-taken and overrule same.

**IV.**

**{¶39}** In its Fourth Assignment of Error, Appellant argues that Appellee failed to show that the sale of the equipment in this case was completed in a commercially reasonable manner. We disagree.

**{¶40}** Revised Code **1302.85 <u>Buyer's remedies in general; buyer's security interest in rejected goods</u>,** provides as follows**:**

**{¶41}** **"**(A) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract, as provided in section 1302.70 of the Revised Code, the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid:

**{¶42}** "(1) "cover" and have damages under section 1302.86 of the Revised Code as to all the goods affected whether or not they have been identified to the contract; or

**{¶43}** "(2) recover damages for non-delivery as provided in section 1302.87 of the Revised Code.

**{¶44}** "(B) Where the seller fails to deliver or repudiates the buyer may also:

**{¶45}** "(1) if the goods have been identified recover them as provided in section 1302.46 of the Revised Code; or

**{¶46}** "(2) in a proper case obtain specific performance or replevy the goods as provided in section 1302.90 of the Revised Code.

**{¶47}** "(C) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care, and custody and may hold such goods and resell them in like manner as an aggrieved seller as provided in section 1302.80 of the Revised Code."

**{¶48}** In this case, Appellee testified that it called Appellant regarding the problems it was having with the machine. (T. at 51). Appellee also testified that it sent a certified letter to Appellant advising Mr. Hunt there were problems with the tractor/saw and requesting a cancellation of the sale. *Id.* Appellant admitted he received such letter. (T. at 37, 42). Appellee further testified it took the machine to Ditch Witch's sales facility for evaluation and also that that it discussed the costs of repairing the machine or replacing the saw with Ditch Witch. (T. at 71, 24-25, Coakley Depo. at 8-9). Appellee also presented testimony that it sold the machine at an auction through professional auctioneers, that the sale was advertised, and that the equipment was available for inspection three days prior to auction.

**{¶49}** Based on the foregoing, we find that the trial court did not err in finding the sale in this matter was commercially reasonable.

**{¶50}**  Appellant's Fourth Assignment of Error is overruled.

**{¶51}**  For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.


By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.


_____


_____


_____

                                                JUDGES

JWW/d 0329

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


DEER CREEK EXCAVATING                  :
                                       :
    Plaintiff-Appellee                 :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
HUNT'S TRENCHING, et al.               :
                                       :
    Defendants-Appellants              :          Case No. 12 CA 53


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

Costs assessed to Appellant.



_____


_____


_____

JUDGES