[Cite as *State v. West*, 2020-Ohio-3434.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellee,                    :

                                             No. 19AP-90

v.                                                       :        (C.P.C. No. 17CR-6048)

James R. West,                                  :        (REGULAR CALENDAR)

     Defendant-Appellant.                 :

---

D E C I S I O N

Rendered on June 23, 2020

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued**: *Michael P. Walton*.

**On brief**: *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued**: *Robert D. Essex*.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, James R. West, appeals the judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of felonious assault with firearm specifications and one count of having weapons while under disability, and sentencing him to a total of 12 years' incarceration. West asserts three assignments of error: he argues the trial court's questions to him during his testimony demonstrated bias and constituted structural error; the trial court further erred by precluding the testimony of a witness; and finally, that these two errors even if separately harmless were prejudicial when viewed together.

No. 19AP-90

{¶ 2} The charges against West arise from an altercation that occurred a few minutes just prior to 11:00 p.m. on October 2, 2017, at Beverage Warehouse on East 11th Avenue in Columbus. Apparently angry from some perceived slight that occurred inside the store, West threatened a fight with Patrick Akers and his friends in the store parking lot. It is not entirely clear who threw the first punch but, in any event, after some punches were thrown between them, Akers and West separated. But one of West's friends was armed and after being handed the gun, West fired several shots at Akers and his friends. West then got into a car with one of his friends and sped away. Akers was hit twice, both times in his right leg. The police arrived on the scene almost immediately, because there is a substation close by, but West and his friends were already gone by the time they arrived. Akers, who had been shot, remained.

{¶ 3} When later questioned, and after waiving his *Miranda* rights, West admitted he was present at the scene and had an altercation with Akers and also that there was gunfire, but denied that he was the shooter. But the initial altercation inside the store, the fight in the parking lot, and the shooting were all captured on security camera footage from multiple angles and established that West had fired a gun at Akers.

{¶ 4} West decided to testify at his jury trial against the advice of his attorney. During his testimony, he admitted to firing a gun in the direction of Akers, but claims he was shooting at the ground and essentially asserts that all of his actions were taken in self-defense because Akers had threatened to rob him.

{¶ 5} During West's examination, the trial court interjected multiple times and asked multiple questions, some of which were aggressive and seemed to elicit problematic statements from West. There were no objections from West's counsel regarding any of the trial court's questions, but on appeal West challenges several questions by the court. At one point the trial court asks West in reference to the video "[i]s that you with the gun, shooting?" and West responds affirmatively, which is the first time in the transcript that West admits to firing a gun. (Tr. Vol. III at 367.) The trial court also questioned West skeptically regarding the basis of his claim that Akers was threatening to rob him—"[Akers] didn't say he was going to rob you. You thought that's what he was implying by saying the 'N' word, and I'm going to take your money?" *Id.* at 366. And toward the end of plaintiff-appellee, the State of Ohio's cross-examination, this exchange occurred:

THE COURT: You lied to the police, didn't you?

THE DEFENDANT: Because I wanted to give myself a fighting chance in court  * * * I knew if I pled guilty that day, there would be no way for me to come all the way to this point.

* * *

THE STATE: Okay. You said, "[t]here was some shooting, but it wasn't me," right?

THE DEFENDANT: I just told you what I said. I didn't have a lawyer present, so why would I plead to anything?

THE COURT: It wasn't a question of pleading. You waived your right, and you made a statement to the police. You didn't tell them it was self-defense at that time. It's just that simple, right?

THE DEFENDANT: Yes, sir.

*Id.* at 411-12.

{¶ 6} Following West's testimony, his attorney did not call any additional witnesses. West was upset with this because he wanted to call witnesses to establish that at the time he fired the shots, he could not see because his eyes were bloodied up from being hit early in the fight. But although at least one such person was present to testify, that witness was unknown to defense counsel, had not been previously disclosed to the state, and apparently had been sitting in the gallery for the duration of the trial. After a sidebar conference, the trial court brought the proposed witnesses into the courtroom, outside of the presence of the jury, and confirmed the state objected to testimony by undisclosed witnesses. The court concluded that the testimony would be duplicative, since West had already testified that "he got hit hard in the face," that "he couldn't see out of his eye," and that "he had a bloody nose." *Id.* at 419-20.

{¶ 7} The trial court then ruled that "there's enough evidence to give the jury a self-defense instruction, and it will be the instruction that deals with the use of deadly force." *Id.* at 421-22. And apparently in an attempt to ensure the jury was not improperly influenced by its questions to West, the trial court gave an additional curative instruction to the jury:

THE COURT: The next part is important. Sometimes I ask questions. However, any question that I ask of any tone in my

No. 19AP-90

> voice, because I can get aggravated, don't take that as any indication of how I think the case should come out.
>
> How I think a case should come out has no bearing on anything. Don't place any emphasis on any questions I asked, and don't put any emphasis on why I asked a question. It doesn't matter. What matters is your evaluation. If I did anything, disregard it.

*Id.* at 475.

{¶ 8} The jury was sent to deliberate at 2:40 p.m. At 3:25 p.m., the jury sent the court a written question and asked whether they could be escorted to their cars after they returned a verdict and the court gave them an affirmative answer. The jury reached its verdict at 4:35 p.m., and at 4:43 p.m. West was found guilty on both counts of felonious assault with gun specifications. Shortly after the jury was excused, the court issued a bench verdict finding West guilty of having weapons under disability.

{¶ 9} The following day, the trial court sentenced West to a total of 12 years' incarceration, and stated the following:

> THE COURT: And I think you lied on the stand. I do, sir, I'm sorry. I think you absolutely lied and changed your story. I get it, nobody wants to do 12 or 13 years. People do lie when they're facing heavy time. You're out there thugging. Maybe you're not a thug. I don't know.
>
> I know you have been in front of me before, and you only got a year. Maybe if I had given you more time, this young man wouldn't have been shot. You know, I give people breaks, and you've had a break in front of me.
>
> * * *
>
> You went to fight. I think you lied on the witness stand. You're carrying a gun, and you have a prior gun case.

*Id.* at 495-96, 498.

{¶ 10} This timely appeal followed, and West now asserts three assignments of error. We will address each in turn.

> The appellant's trial was tainted by structural error when the court violated Mr. West's Sixth Amendment right to be tried by an impartial judge.

No. 19AP-90

**{¶ 11}** West first asserts that his right to be tried by an impartial judge was violated in this case and cites as evidence the several questions he was asked by the trial court during his testimony. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955).

**{¶ 12}** In *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113 (1970), the Supreme Court of Ohio stated:

> In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness. While a trial judge may interrogate a witness as long as the questions relate to relevant matters and do not show or even suggest to the jury that he favors one side or the other, a judge may not interrogate a witness in such a manner that the jury's conclusions as to the credibility of the witness may thereby be influenced.

*Id.* at 119. But in *State v. Batson*, 85 Ohio St.3d 418 (1999), the court pulled back a bit on this broad pronouncement. Quoting Evid.R. 614(B), the court observed:

> [Trial courts] "may interrogate witnesses in an impartial manner, whether called by itself or a party." * * * While it is possible to cross the line from helpful clarification to unwarranted intervention[.]
>
> The questioning here was limited, and consisted mostly of attempts to clarify the witnesses' testimony, as is contemplated by the rule. The questioning was neither excessive nor prejudicial to the defendant. "In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth."

(Citations omitted.) *Id.* at 425-426. The court has recently held that the " 'threshold inquiry is whether, with reference to a range of acceptable, though not necessarily model, judicial behavior, the [trial] court's conduct falls demonstrably outside this range so as to constitute hostility or bias.' " *State v. Cepec*, 149 Ohio St.3d 438, 451, 2016-Ohio-8076, ¶ 74, quoting *McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir.2005).

No. 19AP-90

{¶ 13} West argues the trial court was clearly biased against him and citing *Arizona v. Fulminante*, 499 U.S. 279 (1991), West asserts this bias affected his entire trial and constitutes "structural error" that is not susceptible to a harmless error analysis. In *Fulminante*, the United States Supreme Court reversed a conviction that was based in part on a coerced confession but held that the admission of the confession was "trial error" subject to a harmless error analysis on remand. *Id.* at 309-10. Drawing a distinction between "trial error" and "structural error," the court compared the situation with that presented in *Tumey v. Ohio*, 273 U.S. 510 (1927), and observed that the error in *Tumey* involved "a judge who was not impartial" which is a "structural defect[] in the constitution of the trial mechanism" and "def[ies] analysis" by "harmless-error" standards. "The entire conduct of the trial from beginning to end is obviously affected  * * * by the presence on the bench of a judge who is not impartial." *Fulminante* at 309-10.

{¶ 14} West's basic argument is that the trial court's questions demonstrated bias, that a biased judge is an error that infects the entire trial, and that his case must be reversed without regard to the question of whether that error can be shown to be prejudicial. *See, e.g.*, *State v. Brown*, 2d Dist. No. 25285, 2013-Ohio-1579, ¶ 29-33 (citing *Tumey* and *Fulminante* and holding that the trial court's "interrogation" of the defendant was structural error). West's argument and citation to *Brown* also implies, but does not directly assert, that a contemporaneous objection to the trial court's questions was not required to preserve "structural error" for appellate review.  *Id.* at 31-34 (citing *People v. Sprinkle*, 27 Ill.2d 398, 401 (1963), and holding that the contemporaneous-objection rule "has limited application when the error is that the trial judge has ceased to be impartial" because a "judge who has become partisan cannot be expected to correct the error.")

{¶ 15} The state responds that West cannot rely on *Tumey*, because in that case "the defendant had been tried and convicted by the mayor of the village, who had a pecuniary interest in convicting the defendant." (Appellee's Brief at 4.) We agree that the situation at issue in *Tumey* was very unusual—the city ordinance at issue provided that the mayor "should receive or retain the amount of his costs in each case  * * * as compensation for hearing such cases [but only if] the defendant if convicted. There is, therefore, no way by which the Mayor may be paid for his service as judge, if he does not convict those who are brought before him." *Tumey* at 520. In that circumstance, it seems beyond question the

No. 19AP-90

court's bias is indeed "structural," since the factfinder obtains a direct monetary benefit from finding the defendant to be guilty.

{¶ 16} Instead, the state analogizes this case to *State v. Baston*, 85 Ohio St.3d 418 (1999), in which the Supreme Court applied the plain-error rule to a trial court's questioning. In *Baston*, the defendant identified "four examples [of questioning] in the transcript; however, not once was an objection entered to the court's questioning; therefore, Baston waived all but plain error." *Id.* at 425. Additionally, the state argues the trial court's curative instruction adequately addressed any concerns that may have arisen as a result of the court's allegedly biased questioning. As in *Cepec* at ¶ 77, "even if a juror had thought that the judge might have indicated which side he favored, the judge properly instructed the jurors to ignore any such indication. A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge."

{¶ 17} The trial court's questioning of West might well have been intemperate. But we agree with the state that when viewed in the context of the record as whole, the trial court's questions were limited, and came only after the trial court gave specific warnings to West regarding testifying against his attorney's advice and the effect that would have on his case. Moreover, under *Baston,* West has failed to demonstrate the trial court's questions constituted plain error. And finally, any arguable problem was cured by the trial court's curative instruction. Accordingly, West's first assignment of error is overruled.

{¶ 18} West states under his second assignment of error:

> The appellant's right under the Sixth and Fourteenth Amendments and Article I, Sections 10 and 16 of the Ohio Constitution to present a defense was violated when the court refused to permit a witness to testify by immediately imposing the most severe sanction permissible for a discovery violation.

{¶ 19} In his second assignment of error, West cites *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), and argues that his Sixth Amendment and Ohio Constitution right to present a defense was violated by the trial court's decision to preclude the testimony of an unnamed witness at the close of West's own testimony. In *Papadelis*, the trial court excluded the testimony of all defendant's witnesses because defense counsel had not responded to the state's discovery demand. *Id.* at 2. In response, defense counsel proffered of the expected testimony into the record and rested his case. *Id.* The Supreme Court reversed, holding that "[b]efore imposing the sanction of exclusion, the trial court must find

that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witnesses were permitted to testify." *Id.* at 5. The court concluded the "trial court did not indicate that it balanced the state's interests against Papadelis' Sixth Amendment right to present a defense by considering any sanction other than excluding the testimony of his witnesses," and held that "a trial court must inquire into the circumstances surrounding a violation of Crim.R. 16 prior to imposing sanctions  * * * and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Id.* at 5. Such rulings are analyzed by reviewing courts for an abuse of discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 33-36 (interpreting Crim.R. 16 and quoting the staff note to hold that under the 2010 amendments to the rule, "[t]he trial court continues to retain discretion to ensure that the provisions of the rule are followed").

{¶ 20} The record in this case regarding the excluded witness is sparse—it does not contain the witness's name or identifying information, but it does indicate that the witness had: 1) sat through the trial, 2) was not previously known to defense counsel, 3) was not previously disclosed to the state, and 4) by West's own statement would "testify that I was hurt, I was bloody, my eyes was black." (Tr. Vol. III  at 416.) Neither West nor his attorney gave any additional information about the witness on the record, and while the trial court ruled that the witness would be excluded, it also stated that it was open to reconsidering the ruling if necessary following the lunch break. *Id.* at 420-21. ("[I]f something changes, if the prosecutor doesn't object and you interview the person, then maybe I'll talk about it. But at this point, that's what we're doing.") When the court came back into session after the break, West's attorney did not attempt to call the witness and instead rested. And unlike in *Papadelis*, here there was no specific proffer regarding the substance of the witness' testimony or how it would affect West's defense. *Compare id. Papadelis*, at 5.

{¶ 21} Under these circumstances, we believe West failed to preserve his alleged error for review by not proffering either the witness or the substance of the witness's testimony after the lunch break and choosing instead to rest. Although the court did not specifically find that there were no reasonable alternatives to excluding the witness, we believe such a finding would have been superfluous given the trial court's lack of information about the witness or the substance of the witness' testimony.  Accordingly, we

No. 19AP-90

conclude there is no error in the court's decision, harmless or otherwise, and overrule West's second assignment of error.

{¶ 22} West's third assignment of error states:

> The multiple violations of Mr. West's Constitutional rights rise to the level of cumulative error.

{¶ 23} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). However, the cumulative error doctrine "does not apply to cases that are not marked by multiple instances of harmless error." *State v. Madden*, 10th Dist. No. 16AP-259, 2017-Ohio-8894, ¶ 57, quoting *State v. Banks*, 10th Dist. No. 03AP-1286, 2005-Ohio-1943, ¶ 23, citing *Garner*. There are not "multiple instances of harmless error" in this case, since any alleged errors were not preserved. West's third assignment of error accordingly lacks merit and is overruled.

{¶ 24} For these reasons, West's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 25} I agree with the majority that the trial court did not err with regard to the unproffered potential witness, and therefore I concur in overruling Mr. West's second assignment of error. But I reluctantly disagree with the majority's suggestion that the trial court's "aggressive," "intemperate," and "skeptical[]" questioning of defendant West, *see supra* at ¶ 5 and 16—repeated questioning that contradicted the defendant's interpretation of events (*see, e.g.,* Tr. at 366), challenged his credibility (*see, e.g., id.* at 395), and suggested a prosecution line of inquiry that culminated in judicial cross-examination affirming that the defendant had "lied to the police" (*id.* at 410-11, 412)—was within " 'a range of acceptable * * * judicial behavior,' " *see supra* at ¶ 11 (quoting *Cepec*, 2016-Ohio-8076, at ¶ 74). I don't think it was (although I am not unsympathetic to the trial court's having yielded to the

cross-examination temptation under these circumstances), and I am constrained to find that it created structural error. I therefore would sustain Mr. West's first assignment of error and deem his third assignment of error moot.

{¶ 26} *Cepec* reminds us that " 'a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.' " 2016-Ohio-8076 at ¶ 73, quoting *State v. Lamar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34. *Cepec* also defines "biased" as implying a " 'spirit of ill will or undue * * * favoritism * * *, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *Id.*, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. And *Cepec* confirms that "[t]he presence of a biased judge [as thus defined] is structural error, which, if demonstrated, requires reversal." *Id.*, citing *State v. Sanders*, 92 Ohio St.3d 245, 278 (2001). Thus, where suggestions that the judge has picked a side sufficiently permeate a jury trial, reversal is required. *Id.; see also Chand*, 21 Ohio St.2d 113 at paragraph four of the syllabus ("In a jury trial, where the intensity, tenor, range and persistence of the court's interrogation of a witness can reasonably indicate to the jury the court's opinion as to the credibility of the witness or the weight to be given to his testimony, the interrogation is prejudicially erroneous").

{¶ 27} I take the teachings of our Supreme Court to mean that in Ohio, as in the United States generally, a judge is to be a neutral arbiter, calling balls and strikes. Under our state's system of separated powers, a judge at trial is not to take on the role of an assistant prosecutor, or even of a Procurator General.

{¶ 28} But in this case, things seem to have moved a bit in that direction. I need not belabor the trial court's questioning, as described very fairly by the majority, but do note that the judge's tendentious response to Mr. West's testimony that the victim had "said he was going to rob me" ("He didn't say he was going to rob you," Tr. at 366), was promptly adopted by the prosecution: "As the Judge correctly pointed out, he didn't say he was going to rob you?" *See* Tr. at 388-89 (following up on defendant's characterization of what he said was the victim's statement that "I'm going to take that shit [away from you]," *see* Tr. at 363, 366). And after the prosecutor had said, "Your Honor, I'm wrapping up, if the Court will allow me a minute," the judge prompted: "Did he make a statement to a police officer?"

No. 19AP-90

Tr. at 410. That inquiry of the prosecutor (which came after two officers had testified that Mr. West denied having fired a weapon) was followed, perhaps not surprisingly, by the prosecutor's then asking the defendant: "So you made a statement to the police officer, right?" Tr. at 411. It was only two questions later that the judge personally interjected his own cross-examination: "You lied to the police, didn't you?" When the defendant acknowledged that he had done just that ("Because I wanted to give myself a fighting chance at court"), the prosecutor again adopted the judge's language: "That's what you're doing, you're lying to the Court to give yourself a fighting chance here?" Tr. at 411. It was after a few more questions and answers that the judge reentered the examination with the rebuttal and compound, leading question that the majority quotes at paragraph 5: "It wasn't a question of pleading. You waived your right, and you made a statement to the police. You didn't tell them it was self-defense at that time. It's just that simple, right?" Tr. at 412. Mr. West responded: "Yes, sir." *Id.*

{¶ 29} So I don't think that as a group, the judge's 17 or so questions of Mr. West were appropriately "limited." *Compare* Majority Decision at ¶ 16. I don't think that they were justified by the defendant's having disregarded the trial court's (well expressed) "warnings * * * regarding testifying." *Compare id.* I read *Cepec* as placing us in the realm of structural error, rather than directing plain error analysis. *Compare id.* And I do not think, at all, that the problems created by the judge's repeated "intemperate" questions were "cured" by his instruction reminding the jury that he had been "aggravated" during the testimony. *Compare id.*

{¶ 30} This is the unfortunate case contemplated but not represented by *Baston* of judicial inquiry "cross[ing] the line from helpful clarification to unwarranted intervention." 85 Ohio St.3d at 426. In *Baston*, the panel's questioning "consisted mostly of attempts to clarify the witnesses' testimony," as permitted under Evid.R. 614(B). *Id.* Not so here. To quote from Learned Hand as invoked in *Brown*, " 'the judge was exhibiting a prosecutor's zeal, inconsistent with that detachment and aloofness which courts have again and again demanded, particularly in criminal trials. Despite every allowance he must not take on the role of a partisan; he must not enter the lists * * * * Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge.' " 2013-Ohio-1579 at ¶ 17, quoting *U.S. v. Marzano*, 149 F.2d 923, 926 (2d Cir.1945) (emphasis omitted).

No. 19AP-90

{¶ **31**} It is perfectly fine and often desirable for a trial judge to pose questions designed to clarify potentially ambiguous testimony or otherwise to provide impartial aid to the jurors. *See, e.g., State v. Johnson*, 10th Dist. No. 03AP-1103, 2004-Ohio-4842, ¶ 10-11 (rule "allows the trial court to ask questions of any witness in an impartial manner"; judge's two questions "did not reflect an assessment of * * * credibility or an assessment of the evidence"). But as the Supreme Court of Ohio reiterated in *Cepec*: "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." 2016-Ohio-8076 at ¶ 72, quoting *Chand*, 21 Ohio St.2d 113 at paragraph three of the syllabus. And a criminal defendant is entitled to a real jury trial no matter the quantum of the evidence against him.

{¶ **32**} Because I would sustain Mr. West's first assignment of error and remand this case, I very respectfully dissent from the majority's decision to that extent.

———————————